UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**Charmine Ellis**
Plaintiff, Pro Se
1418 Saint Marks Avenue
Brooklyn, NY 11233,
Plaintiff,

## 25 CV 10354

v.

ASSISTANT DISTRICT ATTORNEY RICHARD FARRELL, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES;ASSISTANT DISTRICT ATTORNEY JOHN C.
CARROLL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;DETECTIVE
GREENE KUSH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT
JOSEPH PISCATELLA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE
OFFICER PAUL H. ALVA (TAX #963372), IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES;SERGEANT EVAN A. COUCH (TAX #965013), IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES;POLICE OFFICER KARISA M. CRAWFORD (TAX
#969610), IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;SENIOR COUNSEL
JOSEPH ZANGRILLI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;MURIEL
GOODE-TRUFANT, ACTING CORPORATION COUNSEL, IN HER INDIVIDUAL
AND OFFICIAL CAPACITIES;ASSISTANT CORPORATION COUNSEL HANNAH
OLEYNIK, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;CITY OF NEW
YORK; PRIVATE-ACTOR DEFENDANTS: LYNN JEROME AND PAULA SINCLAIR,
DANIEL FRIEDMAN, Esq.
Defendants.

Case No.: _____
JURY TRIAL DEMANDED

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF
(Fed. R. Civ. P. 8, 10; 42 U.S.C. §§ 1983, 1985, 1986, 1988)

---

**COMPLAINT**

Plaintiff **Charmine Ellis**, by and for himself, alleges as follows:

---

**PRELIMINARY STATEMENT**

1. This is a §1983 civil rights action brought by Charmine Ellis, a Brooklyn businesswoman
   and owner of *GCT Mortgage Brokers, LLC* and *Ellis, Maynard, Walwyn, LLC*, whose
   professional reputation, property interests, licensing status, and economic livelihood were
   unlawfully destroyed by a coordinated series of actions undertaken by the New York City
   Police Department, the Kings County District Attorney's Office, and the Corporation
   Counsel of the City of New York, in concert with private individuals and attorneys.

2.

Defendants created, circulated, certified, and publicly ratified a fabricated felony narrative falsely portraying Plaintiff as the beneficiary of a criminal real estate scheme and associating her businesses with felony "deed fraud" — even though Plaintiff was never investigated, never questioned, never arrested, never charged, and never the subject of any judicial proceeding.

3.

The false narrative originated when private defendants Lynn Jerome and Paula Sinclair submitted fabricated allegations to NYPD Detective Greene Kush, who, without investigation or verification, constructed a felony report falsely suggesting Plaintiff's involvement and attributing criminal motive to a legitimate business transaction. This narrative formed the foundation of ongoing municipal misconduct.

4.

Despite knowing that no felony crimes existed, that no arraignment occurred, and that no judicial process was ever initiated against anyone, the Corporation Counsel of the City of New York, including supervisory officials, filed Rule 11–certified representations in federal court asserting the existence of a lawful felony arrest, a sealed criminal case, and judicial proceedings that never happened. These official municipal filings publicly validated and republished the false allegations attaching Plaintiff to criminal activity.

5.

Defendants' actions caused Plaintiff's businesses to be publicly branded as involved in felony real estate fraud. Online platforms, including Yelp and Google, displayed defamatory statements referencing the fabricated criminal allegations, and the New York State Department of Financial Services took note of these claims in connection with Plaintiff's mortgage operations. Plaintiff suffered loss of clients, significant economic harm, injury to corporate goodwill, and impairment of her ability to maintain licensing and professional standing in regulated industries.

6.

Plaintiff's constitutional injuries were not incidental or derivative. They were the direct and foreseeable result of municipal policies, customs, and practices, including:
(a) the City's policy of defending and perpetuating fabricated criminal allegations;
(b) the ratification by Corporation Counsel supervisors of false factual assertions in official filings;
(c) the misuse of sealing statutes to conceal the absence of judicial process;
(d) the intentional suppression of exculpatory evidence; and
(e) the City's failure to train or supervise municipal attorneys on obligations to verify factual representations before certifying them to a federal court.

7.

As a result of Defendants' conduct, Plaintiff suffered violations of her Fourteenth Amendment rights to due process, property, liberty, reputation, and business goodwill; her rights under the First Amendment to speak and petition without retaliation; and her right to equal protection and freedom from conspiratorial deprivation of civil rights under 42 U.S.C. §§ 1983, 1985, and 1986.

8.

This lawsuit seeks to hold all responsible parties accountable, to obtain full compensation for the economic, reputational, and constitutional injuries inflicted on Plaintiff, and to obtain declaratory and injunctive relief preventing the City of New York from continuing to maintain, publish, or ratify fabricated criminal narratives that destroy the livelihoods of innocent citizens.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

The Ellis filings directly harmed Plaintiff Charmine Ellis by attaching fabricated criminal stigma to GCT Mortgage Brokers, LLC and Ellis, Maynard, Walwyn, LLC—businesses she co-owns. Regulatory agencies, lenders, and consumers accessed the Ellis filings and treated the false felony narrative as authoritative, causing lost revenue, reputational damage, and business disruption.

---

## JURISDICTION AND VENUE

9.

This action arises under the **Constitution and laws of the United States**, including **42 U.S.C. §§ 1983, 1985, 1986, and 1988**, and the **First and Fourteenth Amendments** to the United States Constitution. Accordingly, this Court has **federal question jurisdiction** pursuant to **28 U.S.C. § 1331**.

10.

This Court also has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because Plaintiff seeks redress for the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and federal civil rights statutes.

11.

This Court has authority to issue **declaratory and injunctive relief** pursuant to **28 U.S.C. §§ 2201–2202** and **42 U.S.C. § 1983**, including relief preventing the City of New York from continuing to publish or rely upon fabricated criminal allegations that violate Plaintiff's constitutional rights.

12.

This Court has **supplemental jurisdiction** over Plaintiff's state-law claims pursuant to **28 U.S.C. § 1367(a)** because those claims arise out of the same nucleus of operative facts as the federal claims and form part of the same case or controversy under Article III of the United States Constitution.

---

**Venue — SDNY Is Proper**

13.

Venue is proper in the **Southern District of New York** pursuant to **28 U.S.C. § 1391(b)(1)–(2)** because the **City of New York**, a defendant, resides in this District for venue purposes, and a substantial portion of the events and omissions giving rise to Plaintiff's claims occurred within this District.

14.

In particular, the **Corporation Counsel of the City of New York**, headquartered in the Southern District, authored, reviewed, approved, certified, and filed multiple **Rule 11–certified submissions in federal court located in this District**, which:

(a) repeated fabricated criminal allegations that falsely implicated Plaintiff;
(b) asserted the existence of judicial proceedings that never occurred;
(c) misrepresented the sealing status of nonexistent criminal records;
(d) ratified NYPD and KCDAO misconduct as official municipal policy; and
(e) caused continuing economic, reputational, and constitutional injury to Plaintiff.

15.

The City's unconstitutional litigation conduct in this District constitutes an **independent and substantial basis** for venue, because the public dissemination, ratification, and perpetuation of the false felony narrative occurred **through filings made in the Southern District of New York**, accessible to the public and relied upon by state agencies and private actors in harming Plaintiff.

16.

Venue is additionally proper under § 1391(b)(2) because **acts of municipal ratification, policymaker approval, and constitutional injury** occurred in this District when senior Corporation Counsel officials reviewed and approved the filings at issue, rendering SDNY the

proper forum for adjudicating Monell liability arising from attorney policymaking and municipal litigation practice.

17.

To the extent any defendant resides outside this District, venue remains proper under **§ 1391(b)(3)** because all defendants are residents of the State of New York and subject to this Court's personal jurisdiction.

## Personal Jurisdiction

18.

This Court has personal jurisdiction over all defendants because they reside in New York or committed acts and omissions in New York that caused foreseeable harm to a New York resident. Each defendant acted under color of state law or conspired with state actors to deprive Plaintiff of her constitutional rights.

## PARTIES

### Plaintiff

19. **Plaintiff CHARMINE ELLIS** ("Plaintiff" or "Charmine") is an individual residing in Brooklyn, New York.
    She is the founder and owner of *Ellis, Maynard, Walwyn, LLC* and *GCT Mortgage Brokers, LLC*, two professional service companies that rely on state licensing, regulatory compliance, and business reputation for successful operation.

20. Plaintiff possesses independently protected federal **property interests** in her businesses, professional goodwill, licensing status, commercial reputation, and client relationships. These interests were materially damaged by the acts, omissions, and unconstitutional policies of the defendants.

21. Plaintiff brings this action to redress the **stigma-plus, property-deprivation, economic, reputational**, and **constitutional injuries** she suffered because defendants created, published, ratified, litigated, and maintained a **fabricated felony narrative** falsely associating her with deed fraud and criminal conduct.

22. Plaintiff's injuries are **direct, personal**, and **not derivative** of the harms suffered by any other individual.
    She brings this lawsuit in her own right, asserting her own federal claims under §§1983, 1985, and 1986, and Monell liability against the City of New York.

### Municipal Defendant

23. **Defendant CITY OF NEW YORK** ("City") is a municipal corporation organized under the laws of the State of New York.
    At all relevant times, the City operated and controlled the New York City Police Department ("NYPD") and the Corporation Counsel of the City of New York.
    The City is liable under **Monell v. Department of Social Services**, 436 U.S. 658 (1978),

for maintaining official policies, customs, practices, and ratifications that caused Plaintiff's constitutional injuries.

## Corporation Counsel Defendants

24. **Defendant MURIEL GOODE-TRUFANT** was, at all relevant times, the Corporation Counsel of the City of New York, a final policymaker for municipal litigation conduct. She approved, ratified, and authorized Rule 11–certified filings perpetuating false factual narratives that harmed Plaintiff. She is sued in her individual and official capacities.

25. **Defendant JOSEPH ZANGRILLI** was, at all relevant times, Senior Counsel within the Special Federal Litigation Division. He reviewed, approved, supervised, and directed litigation positions that preserved the fabricated felony narrative and suppressed exculpatory facts, causing harm to Plaintiff's businesses. He is sued in his individual and official capacities.

26. **Defendant HANNAH OLEYNIK** was, at all relevant times, Assistant Corporation Counsel who drafted, signed, and filed Rule 11–certified submissions repeating fabricated criminal allegations that defamed Plaintiff and destroyed her business reputation. She is sued in her individual and official capacities.

## NYPD Defendants

27. **Defendant DETECTIVE GREENE KUSH** was the originating NYPD investigator who created and circulated fabricated criminal allegations involving Plaintiff's spouse and falsely attributed criminal motive to Plaintiff by name. He is sued individually and officially.

28. **Defendant SGT. EVAN A. COUCH**, Tax #965013, was the approving supervisor for NYPD complaint documents containing false information implicating Plaintiff. Sued individually and officially.

29. **Defendant PO PAUL H. ALVA**, Tax #963372, was the reporting officer involved in documenting and perpetuating fabricated allegations involving Plaintiff. Sued individually and officially.

30. **Defendant PO KARISA M. CRAWFORD**, Tax #969610, was involved in system entries that propagated false allegations damaging Plaintiff's reputation and her business entities. Sued individually and officially.

31. **Defendant SGT. JOSEPH PISCATELLA** participated in irregular arrest-processing actions that furthered the fabricated felony narrative. Sued individually and officially.

32. **Defendants JOHN AND JANE DOE OFFICERS 1–10** are NYPD officers who participated in, assisted with, or ratified the misconduct described herein. Their identities are presently unknown.

**Kings County District Attorney Defendants**

33. **Defendant ADA RICHARD FARRELL** was the ADA who supervised and maintained fabricated allegations without judicial process, and intentionally suppressed exculpatory information, contributing to Plaintiff's harm. Sued individually and officially.

34. **Defendant ADA JOHN C. CARROLL** handled FOIL responses, intentionally misrepresented sealing status, and preserved the false felony narrative that harmed Plaintiff's business interests. Sued individually and officially.

35. **Defendants JOHN AND JANE DOE INVESTIGATORS 1–10** are KCDAO personnel who suppressed or concealed exculpatory information and contributed to the perpetuation of the fabricated criminal narrative.

**Private Actor Defendants**

36. **Defendant LYNN JEROME** filed false allegations that City officials adopted and publicized, causing Plaintiff economic and reputational injury.

37. **Defendant PAULA SINCLAIR** participated in false reporting and civil litigation pleadings repeating allegations known to be false, contributing to Plaintiff's harm.

38. **Defendant DANIEL FRIEDMAN, ESQ.** knowingly filed civil pleadings containing false allegations that Defendants Greene Kush, Farrell, and Corporation Counsel attorneys had already been advised were untrue, thereby participating in a conspiracy causing Plaintiff's constitutional injury. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### A. Origin of the Fabricated Narrative

**39.**

The events giving rise to this action began when private defendants **Lynn Jerome** and **Paula Sinclair** knowingly submitted **false allegations** to the New York City Police Department ("NYPD"), asserting that real estate documents related to a property transaction had been fraudulently executed. Their statements were materially false, unsupported by evidence, contradicted by public records, and motivated by personal animus and financial dispute—not by any criminal conduct.

**40.**

Despite having no documentary basis for their claims, Jerome and Sinclair falsely alleged that Plaintiff's spouse had "forged" their signatures on a deed and "sold the property to his wife, Charmine Ellis, for $10.00."
This allegation was completely fabricated: **Plaintiff was not a party to the underlying transaction**, did not receive title, did not sign any related documents, and had no involvement whatsoever in the matters presented to law enforcement.

**41.**

These fabricated statements were provided to NYPD **Detective Greene Kush**, who accepted them at face value, failed to review public acris records, failed to interview relevant witnesses,

failed to collect any exculpatory information, and failed to conduct even a minimal investigation before constructing a **felony-level criminal narrative**.

**42.**

Detective Kush then prepared and circulated a **false felony complaint** and associated NYPD paperwork that mischaracterized a civil property dispute as a criminal act, falsely attributed criminal intent to Plaintiff, and improperly included Plaintiff's name as the alleged beneficiary of a fraudulent deed transfer based on the "$10 sale" fiction.

**43.**

At the time he drafted these documents, Detective Kush knew or should have known that his assertions were false because:
(a) no deed existed showing a transfer to Plaintiff;
(b) acris records reflected no criminal irregularity;
(c) the alleged victims' statements were internally inconsistent and contradicted objective records; and
(d) Plaintiff had never been contacted, questioned, or implicated by any valid evidence.

**44.**

Detective Kush's actions were not mistakes; they reflected a **custom and practice** within the NYPD to convert private civil disputes into criminal complaints without adequate investigation, and to accept unsupported allegations where the complainants sought to weaponize the criminal justice system for personal advantage.

**45.**

The false felony narrative created by Detective Kush served as the **operative foundation** for all subsequent municipal and private misconduct.
The false claims inserted into NYPD records became the central "fact" that private defendants repeated in civil court, that the Kings County District Attorney's Office ("KCDAO") accepted without scrutiny, and that the Corporation Counsel of the City of New York later ratified and certified as true in federal filings.

**46.**

At no time did Detective Kush or any NYPD supervisor attempt to verify whether Plaintiff had ever taken title to the property, whether she had received funds, whether she had participated in the transaction, or whether any factual basis existed to name her as an alleged beneficiary of fraud.

**47.**

Defendant **Sgt. Evan A. Couch**, serving as supervising officer, approved Detective Kush's false narrative without requiring documentary support or investigative steps. His approval provided official NYPD endorsement of the fabricated claims, enabling their entry into police databases and their use by KCDAO and other City actors.

**48.**

Defendant **PO Paul H. Alva** contributed to the drafting and reporting of the false complaint, entering materially inaccurate information into NYPD systems and further embedding the fabricated narrative in official databases.

**49.**

Defendant **PO Karisa M. Crawford** made system entries and processing updates adopting the

false narrative, thereby ensuring that Plaintiff's name was associated with an alleged felony act despite the absence of any evidence linking her to wrongdoing.

**50.**

Defendant **Sgt. Joseph Piscatella** participated in irregular arrest-processing procedures connected to these fabricated allegations, helping to maintain the illusion of a legitimate criminal proceeding where no judicial process ever occurred.

**51.**

The fabricated narrative was subsequently provided to the **Kings County District Attorney's Office**, where **ADA Richard Farrell** accepted the false allegations without review, opened a purported "investigation," and suppressed exculpatory evidence showing the underlying transaction was legitimate.

**52.**

No judicial process ever resulted from the fabricated claims:

- **no arraignment,**
- **no complaint filed,**
- **no docket number,**
- **no judicial oversight**, and
- **no criminal charges** against Plaintiff or anyone else.

Yet the fabricated narrative remained active in NYPD and KCDAO systems and was later used by the City to justify municipal litigation positions that harmed Plaintiff.

**53.**

By the time the fabricated felony narrative reached Corporation Counsel years later, the falsity of the allegations was **objectively verifiable**, yet Corporation Counsel attorneys adopted the false narrative as **municipal fact**, certified it under Rule 11, and repeated it in public filings that harmed Plaintiff's businesses.

**54.**

Thus, the origin of Plaintiff's injuries lies in a **manufactured criminal narrative** created without probable cause, without investigation, and without legal foundation, and then perpetuated by City actors and private conspirators to advance litigation positions and to inflict economic, reputational, and constitutional injuries on Plaintiff.

## B. Corporation Counsel's Rule 11 Misconduct and Municipal Ratification

**55.**

By the time Plaintiff's injuries reached the attention of the **Corporation Counsel of the City of New York**, the falsity of the fabricated felony narrative was **objectively verifiable** through public records, police paperwork, and the absence of any judicial proceedings. Nevertheless, Corporation Counsel attorneys knowingly adopted the fabrication as **official municipal fact**.

**56.**

Corporation Counsel, acting through **Senior Counsel Joseph Zangrilli** and **Assistant Corporation Counsel Hannah Oleynik**, drafted, signed, and filed **Rule 11–certified**

**submissions** in federal court asserting that Plaintiff's spouse had been lawfully arrested, arraigned, and subject to judicial process involving felony deed fraud, and that Plaintiff was the alleged beneficiary of the supposed fraudulent deed transfer.

**57.**
These municipal filings were not based on negligence, misunderstanding, or lack of access to records. Rather, they were the product of deliberate choices to endorse the NYPD/KCDAO fabrication, to present it to a federal court as true, and to use it as a litigation shield against civil rights liability, despite knowing that no arraignment, no docket number, no criminal complaint, and no judicial process ever existed.

**58.**
Corporation Counsel's Rule 11 statements advanced three central falsehoods:
(a) that a valid felony arrest occurred;
(b) that a judicial criminal case existed and had been sealed; and
(c) that Plaintiff's spouse had engaged in criminal conduct for Plaintiff's benefit, thereby repeating the "$10 deed fraud" fabrication that harmed Plaintiff directly.

**59.**
Each of these assertions was demonstrably false and contradicted by law, fact, and the City's own records. Corporation Counsel attorneys either knew these assertions were false when they certified them, or recklessly disregarded their falsity.

**60.**
These misrepresentations were repeated in public filings made in the Southern District of New York, which are accessible to online databases, search engines, and third parties. As a result, the fabricated felony narrative gained the veneer of **official municipal legitimacy** and was repeatedly referenced in online publications and state regulatory contexts that harmed Plaintiff's businesses.

**61.**
Corporation Counsel's litigation positions were not isolated errors. They reflected a **municipal policy and practice** of defending civil rights cases through reliance on fabricated arrest narratives, misuse of sealing statutes, suppression of exculpatory information, and repetition of false facts to shield the City and its employees from liability.

**62.**
Corporation Counsel attorneys possessed and reviewed NYPD paperwork that lacked:

- a docket number;

- an arraignment record;

- a complaint signed by a prosecutor;

- a sealable case file under CPL 160.50;

- any evidence that Plaintiff had ever been investigated or implicated in wrongdoing.

Despite these omissions, they intentionally presented the narrative as judicially verified.

**63.**
Corporation Counsel further misused New York sealing statutes by asserting that records could not be disclosed due to sealing under CPL 160.50, even though **no criminal case existed to be**

**sealed**. This was done to obstruct Plaintiff's access to exculpatory information and to preserve the false municipal narrative.

**64.**
This misuse of sealing laws constitutes both **misrepresentation to a federal court** and **constitutional injury**, as Plaintiff was denied the ability to access governmental information needed to protect her business reputation, correct defamatory statements, and clear her name.

**65.**
Corporation Counsel supervisors, including **Muriel Goode-Trufant**, reviewed, approved, and ratified these filings. As policymaking officials, their approval constitutes **official municipal ratification** under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**66.**
By ratifying and adopting the false felony narrative, municipal policymakers transformed Detective Kush's and ADA Farrell's fabrication into **City policy**, thereby directly causing Plaintiff's constitutional injuries, economic harm, and reputational damage.

**67.**
Corporation Counsel attorneys also ignored or rejected multiple disclosures, exhibits, and notices—including formal Safe Harbor notice—showing that the City's factual assertions were false. Their refusal to correct or withdraw these filings constitutes deliberate indifference and intentional misconduct.

**68.**
These actions were done under color of law, in the course of municipal litigation, and for the purpose of preserving a false narrative that harmed Plaintiff's businesses. They therefore constitute **state action** for purposes of **42 U.S.C. § 1983**.

**69.**
Corporation Counsel's litigation conduct was a **proximate cause** of Plaintiff's injuries because their false filings:
(a) republished the fabricated felony narrative with the weight of municipal authority;
(b) caused defamatory allegations to spread online;
(c) reinforced misinformation relied upon by the Department of Financial Services;
(d) undermined Plaintiff's business reputation; and
(e) prevented correction of the public record.

**70.**
The actions of Corporation Counsel constitute a **municipal custom and practice** of:

- perpetuating fabricated charges;

- suppressing exculpatory evidence;

- misrepresenting arrest procedures;

- ratifying police misconduct;

- misusing sealing statutes;

- damaging the reputations and property interests of innocent citizens.

Such conduct violates the Fourteenth Amendment, the First Amendment, and federal civil rights statutes including **42 U.S.C. §§ 1983, 1985, and 1986**.

**71.**

As a direct and foreseeable result of these municipal actions, Plaintiff suffered substantial injuries, including economic loss, client loss, reputational damage, professional impairment, DFS scrutiny, and constitutional deprivations of her property and liberty interests.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in _Ellis v. City of New York_, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (_Ricciuti v. N.Y.C. Transit Auth._, 124 F.3d 123 (2d Cir. 1997); _Zahrey v. Coffey_, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (_Valmonte v. Bane_, 18 F.3d 992 (2d Cir. 1994); _Patterson v. City of Utica_, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (_Spinelli v. City of New York_, 579 F.3d 160 (2d Cir. 2009); _O'Connor v. Pierson_, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (_Monell, Pembaur, Jeffes, Mangino_);
• **Retaliatory municipal litigation conduct** (_Dorsett, Gorman-Bakos_);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (_Shomo, Gonzalez_).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

The Ellis filings directly harmed Plaintiff Charmine Ellis by attaching fabricated criminal stigma to GCT Mortgage Brokers, LLC and Ellis, Maynard, Walwyn, LLC—businesses she co-owns. Regulatory agencies, lenders, and consumers accessed the Ellis filings and treated the false felony narrative as authoritative, causing lost revenue, reputational damage, and business disruption.

---

## C. Harm to Plaintiff's Businesses, Goodwill, Reputation, and DFS Standing

**72.**

Plaintiff **Charmine Ellis** is the founder and owner of two licensed, reputation-dependent professional service companies:
(a) **GCT Mortgage Brokers, LLC**, a New York mortgage brokerage subject to strict regulation by the **New York State Department of Financial Services ("DFS")**; and
(b) **Ellis, Maynard, Walwyn, LLC**, an accounting, financial services, and business advisory firm serving clients who rely on Plaintiff's professional integrity and trustworthiness.

**73.**

The integrity, revenue, licensing compliance, and day-to-day operations of Plaintiff's businesses depend heavily on the maintenance of a clean professional reputation, regulatory trust, and public confidence—interests that are recognized as **property interests** under the Fourteenth Amendment.

**74.**

Defendants' creation, certification, publication, and municipal ratification of a **fabricated felony narrative** falsely linking Plaintiff to "deed fraud," "forgery," and a "felony transfer for $10" directly attacked these property interests. These false statements were disseminated through:
(a) NYPD reports;
(b) KCDAO records;
(c) Corporation Counsel Rule 11 filings in federal court;
(d) online publications and search indexes; and
(e) civil filings by private actors repeating allegations known to be false.

**75.**

As a direct result of Defendants' actions, online platforms including **Google**, **Yelp**, and other searchable databases began hosting and circulating defamatory statements portraying Plaintiff or her businesses as involved in **felony real estate fraud**. These statements were viewed by members of the public, prospective clients, current clients, financial institutions, and regulators.

**76.**

Clients and prospective customers of both GCT Mortgage Brokers and Ellis, Maynard, Walwyn contacted Plaintiff expressing concern about the allegations appearing online, questioning her integrity, and in numerous instances **terminating business relationships** or withdrawing from pending engagements.

**77.**

Mortgage brokers in New York operate under heightened scrutiny from **DFS**, which monitors brokers for any indications of fraud, dishonesty, or criminal activity. The fabricated felony narrative disseminated by Defendants triggered **regulatory attention**, casting doubt on Plaintiff's suitability to maintain her mortgage broker licensing and undermining her ability to secure and maintain institutional relationships.

**78.**

As a result of the false allegations municipal defendants ratified and circulated, Plaintiff experienced:
(a) **loss of clients**, including long-term customers and new prospects;
(b) **loss of revenue** and measurable decline in business income;
(c) **interference with contractual relationships** and business expectancy;
(d) **damage to her businesses' goodwill**;
(e) **damage to creditworthiness and business reliability**;
(f) **reputational injury** affecting her ability to maintain regulatory compliance; and
(g) **emotional distress and professional humiliation**.

**79.**

The losses suffered by Plaintiff are quantifiable and ongoing. GCT Mortgage Brokers experienced reduced loan volume, diminished client referrals, and reputational damage impacting Plaintiff's ability to partner with banks and financial institutions. Ellis, Maynard, Walwyn saw decreased client retention and erosion of professional trust.

**80.**

Defendants' actions caused a **stigma-plus constitutional injury**, because:
(a) the City, through Corporation Counsel, publicly endorsed defamatory, reputationally destructive allegations; and
(b) Plaintiff experienced tangible harms—economic loss, business impairment, and regulatory consequences—constituting the required "plus" element under **Second Circuit stigma-plus doctrine**.

**81.**

The false narrative maintained by municipal actors created continuing uncertainty regarding Plaintiff's regulatory and professional standing. DFS monitors public litigation records, complaints, and allegations linked to mortgage brokers. Corporation Counsel's filings, which publicly legitimized the fabricated felony narrative, were reasonably understood as official confirmations of wrongdoing.

**82.**

The municipal filings thus served as **amplifiers**, not merely repetitions, of the defamatory allegations because:
(a) they bore the imprimatur of the City of New York;
(b) they were certified under Rule 11;
(c) they were presented to federal courts that rely on factual accuracy; and
(d) they were accessible to regulators, online platforms, and third parties that subsequently referenced or acted upon these false statements.

**83.**

As a result, Plaintiff's businesses were forced to operate under a cloud of suspicion, reputational stigma, and professional harm caused not by market forces, but by the City's unconstitutional acts and omissions.

**84.**

These injuries constitute **Fourteenth Amendment property deprivations**, because Plaintiff's property interests in her businesses—goodwill, licensing status, client relationships, and economic livelihood—were impaired without due process and through the arbitrary actions of City officials.

**85.**

But for the City's repeated and intentional ratification of the fabricated felony narrative, Plaintiff would not have suffered these injuries. Each category of harm was the direct and foreseeable result of the City's actions—actions undertaken by NYPD investigators, KCDAO officials, and municipal attorneys acting under color of law.

**86.**

Plaintiff continues to suffer ongoing injury because:
(a) the false narrative remains uncorrected;
(b) public filings remain accessible;
(c) search engines continue to index allegations connected to her businesses; and
(d) regulators and financial institutions rely on publicly available information when assessing broker suitability.

**87.**

The City's failure to retract, correct, or withdraw its false statements—despite multiple notices,

exhibits, and Safe Harbor warnings—demonstrates deliberate indifference and municipal ratification, further entrenching the harms suffered by Plaintiff.

## D. Ongoing Publication and Continuing Constitutional Injury

**88.**
The constitutional injuries inflicted on Plaintiff are not historical or isolated; they are **ongoing**. The false felony narrative created by NYPD, endorsed by KCDAO, and later certified and ratified by Corporation Counsel continues to circulate publicly and continues to inflict new and compounding harm on Plaintiff's reputation, livelihood, licensing status, and property interests.

**89.**
Because Corporation Counsel filed Rule 11–certified submissions containing fabricated criminal allegations in the Southern District of New York, those filings remain **publicly accessible** on federal court dockets, searchable through PACER, RECAP, Google, and other indexing services used by clients, employers, lenders, and regulators.

**90.**
Each day that the City refuses to correct, withdraw, amend, or disclaim those filings constitutes a **new republication** of the false narrative, and thus a **continuing constitutional violation**, which prolongs and exacerbates the harm to Plaintiff's business interests and professional reputation.

**91.**
Search engines, review sites, and online platforms—including **Google, Yelp, LinkedIn, and third-party data aggregators**—continue to reference, index, and amplify the fabricated felony narrative. These platforms do not differentiate between the initial NYPD fabrication, the KCDAO's failures, or the City's Rule 11 filings; they perceive all as authoritative, government-backed statements of criminal conduct.

**92.**
As a result, Plaintiff remains publicly portrayed as connected to felony real estate fraud—an allegation that never had any factual basis and was, at every stage, a falsehood manufactured by NYPD and preserved by municipal authorities.

**93.**
This ongoing publication constitutes a **"stigma-plus" injury** under the Fourteenth Amendment, because:
(a) the City's official statements continue to stigmatize Plaintiff; and
(b) Plaintiff continues to suffer tangible impairments, including client loss, revenue loss, reputational damage, and regulatory scrutiny—all of which satisfy the "plus" requirement under Second Circuit law.

**94.**
Mortgage brokers, financial institutions, and DFS regulators routinely review litigation histories, regulatory filings, and public complaints when assessing the suitability of licensed professionals. Because the City-certified false narrative remains active and publicly accessible, Plaintiff continues to face **heightened scrutiny**, reputational damage, and barriers to maintaining or expanding her business operations.

**95.**
The City of New York has received multiple notices—including detailed exhibits, Safe Harbor

warnings, factual corrections, and procedural challenges—demonstrating conclusively that its statements regarding the supposed felony arrest and sealing were false. Nonetheless, the City has elected to **maintain the false narrative**, a choice that constitutes **municipal ratification** and **deliberate indifference** to Plaintiff's rights.

**96.**

By failing to correct the record, update its filings, or withdraw its false representations, the City allows the fabricated narrative to continue undermining Plaintiff's constitutional rights. This refusal constitutes **ongoing state action** directly attributable to the municipality under **Monell**.

**97.**

Plaintiff continues to experience reputational injury because the City's filings, carrying the authority of Rule 11 certification, are given significant weight by courts, government agencies, and the public. These filings signal to third parties that the allegations were vetted, verified, and judicially processed when, in reality, no judicial process ever occurred.

**98.**

The continued existence of these filings—and the City's refusal to correct them—impedes Plaintiff's ability to conduct business, secure clients, maintain trust with financial institutions, and preserve her regulatory standing. These harms are **ongoing, direct**, and **foreseeable**, and they persist solely because Defendants continue to republish and ratify the false narrative.

**99.**

This ongoing injury constitutes a **continuing violation** under federal law, as each day the City preserves and disseminates the fabricated felony narrative results in a new deprivation of Plaintiff's Fourteenth Amendment liberty and property interests.

**100.**

The public nature of the City's ratification means that third-party actors—clients, banks, regulators, professional networks, and licensing authorities—rely on the narrative as an authoritative statement of criminal misconduct. The City's deliberate indifference in maintaining the false narrative thus amplifies and renews Plaintiff's harm on an ongoing basis.

**101.**

Because these injuries are ongoing and self-perpetuating, Plaintiff is entitled to **injunctive relief** compelling the City to correct the record, withdraw its false filings, and cease maintaining fabricated criminal allegations as municipal fact.

## E. Summary of Constitutional Violations

**102.**

The actions and omissions of Defendants, acting individually and in concert, under color of state law and through official municipal policy and ratification, resulted in multiple and ongoing violations of Plaintiff's constitutional rights under the **First and Fourteenth Amendments** to the United States Constitution, as well as violations of **42 U.S.C. §§ 1983, 1985, and 1986**.

**103.**

Defendants deprived Plaintiff of her **Fourteenth Amendment liberty interests** by fabricating, publishing, and repeatedly ratifying a false felony narrative that publicly branded Plaintiff as the beneficiary or participant in criminal fraud, thereby placing a significant stigma on her personal and professional reputation.

**104.**

This stigmatization was accompanied by direct and tangible harm to Plaintiff's business relationships, licensing status, goodwill, and economic livelihood—constituting the "**stigma-plus**" constitutional deprivation recognized by the Second Circuit and clearly actionable under § 1983.

**105.**

Defendants also deprived Plaintiff of her **Fourteenth Amendment property interests,** including:

(a) the goodwill and professional reputation of her businesses;

(b) the economic value of ongoing client relationships;

(c) her ability to operate regulated financial businesses free of state-created stigma; and

(d) the right to pursue her chosen profession without government-imposed falsehoods impairing her standing.

These interests are federally protected "property," and their deprivation without due process is a constitutional violation.

**106.**

Defendants' actions further violated Plaintiff's **procedural due process rights,** as:

(a) the fabricated felony narrative was created without investigation;

(b) Plaintiff was never notified, questioned, or provided an opportunity to contest the allegations;

(c) no judicial process ever occurred;

(d) municipal actors falsely asserted judicial process existed; and

(e) the City used sealing statutes to obstruct access to exculpatory information despite knowing no sealed case existed.

**107.**

Defendants' ongoing republication and ratification of the fabricated narrative constitutes an **ongoing due process violation**, as each day the City maintains false statements in public filings creates a new, independent deprivation of Plaintiff's liberty and property interests.

**108.**

Defendants further violated Plaintiff's **First Amendment rights** by retaliating against her for protected activity—including objecting to the false allegations, communicating complaints, seeking information, and challenging government inaccuracies—through continued municipal publication and reinforcement of false statements intended to silence, punish, or deter her.

**109.**

Defendants' coordinated conduct—including the actions of NYPD officers, KCDAO personnel, Corporation Counsel attorneys, and private actors—constitutes a **conspiracy** to deprive Plaintiff of equal protection and due process under **42 U.S.C. § 1983**, as demonstrated by:

(a) the joint creation, preservation, and publication of fabricated criminal allegations;

(b) the suppression and concealment of exculpatory evidence;

(c) the repetition of false statements known to be untrue;

(d) the shared objective of defending or advancing interests through defamation and misrepresentation; and

(e) the coordinated efforts of municipal and private actors to legitimize the fabricated narrative.

**110.**

The same conduct constitutes a violation of **42 U.S.C. § 1985(3)**, as multiple defendants conspired to deprive Plaintiff of the equal protection of the laws, and targeted her for reputational and economic destruction based on fabricated criminal allegations. The conspiracy's objective

was to injure Plaintiff's business, impair her professional standing, and obstruct her pursuit of lawful livelihood.

**111.**
Because supervisory officials and policymakers within the City of New York—including **Muriel Goode-Trufant** and **Joseph Zangrilli**—had actual knowledge of the falsity of the allegations, had authority to prevent further harm, and yet declined to intervene or correct the municipal record, they and the City are further liable under **42 U.S.C. § 1986**, for neglecting to prevent the ongoing conspiracy despite possessing the power and responsibility to do so.

**112.**
The City of New York is liable under **Monell** because Plaintiff's injuries were caused by:
(a) official policies of defending fabricated criminal allegations;
(b) widespread customs and practices of suppressing exculpatory information and misusing sealing statutes;
(c) deliberate ratification of known falsehoods by municipal policymakers; and
(d) failures to train and supervise municipal attorneys regarding their obligations under Rule 11, evidentiary rules, and constitutional standards.

**113.**
These constitutional violations are ongoing and self-perpetuating because the City continues to maintain and circulate false information as municipal fact. The persistence of these false allegations violates Plaintiff's constitutional rights each day they remain uncorrected.

**114.**
As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer:
(a) significant economic loss;
(b) damage to business goodwill and reputation;
(c) loss of clients and professional opportunities;
(d) DFS-related scrutiny impacting her mortgage licensing;
(e) emotional distress;
(f) property deprivation; and
(g) constitutional injury warranting compensatory, punitive, injunctive, and declaratory relief.

---

## FIRST CAUSE OF ACTION

## **\*\*42 U.S.C. § 1983 — MUNICIPAL LIABILITY (MONELL)**

Against Defendant CITY OF NEW YORK\*\*

**115.**
Plaintiff repeats and realleges paragraphs 1 through 114 as if fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These

filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

The Ellis filings directly harmed Plaintiff Charmine Ellis by attaching fabricated criminal stigma to GCT Mortgage Brokers, LLC and Ellis, Maynard, Walwyn, LLC—businesses she co-owns. Regulatory agencies, lenders, and consumers accessed the Ellis filings and treated the false felony narrative as authoritative, causing lost revenue, reputational damage, and business disruption.

**116.**
At all relevant times, Defendant **City of New York** (the "City") acted through its final policymakers, attorneys, supervisory officials, police officers, district attorney personnel, and other agents who exercised authority on behalf of the municipality and created, implemented, ratified, and perpetuated the unconstitutional actions described herein.

**117.**
Plaintiff's injuries were caused by multiple, independent grounds of **municipal liability** under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), including:
(a) **official municipal policies,**
(b) **widespread customs and practices,**
(c) **ratification by final policymakers**, and
(d) **failure to train and supervise** municipal attorneys and officers.

## I. Official Policies That Caused Plaintiff's Constitutional Injuries

**118.**
The City, acting through the **Corporation Counsel of the City of New York**, adopted and implemented official litigation policies that included:
(a) defending civil rights cases by asserting fabricated criminal allegations;
(b) certifying false statements under **Rule 11**;
(c) misusing sealing statutes to obstruct access to exculpatory information;

(d) maintaining the false narrative that a felony arrest and judicial process existed, despite knowing none occurred; and

(e) ratifying, preserving, and republishing defamatory criminal allegations that harmed Plaintiff.

**119.**

These litigation policies were formulated, approved, and executed by **final policymakers,** including **Corporation Counsel Muriel Goode-Trufant** and **Senior Counsel Joseph Zangrilli,** whose roles and authority bind the City for Monell purposes.

**120.**

The City's policy of defending municipal liability cases through factual misrepresentation operated as an official municipal policy that directly caused the constitutional violations and injuries suffered by Plaintiff.

## II. Widespread Customs and Practices

**121.**

Beyond formal policies, the City maintained widespread customs and practices that caused Plaintiff's injuries, including:

(a) accepting false allegations without investigation;

(b) converting civil property disputes into criminal matters without probable cause;

(c) suppressing and concealing exculpatory information;

(d) perpetuating fabricated narratives through official filings;

(e) refusing to correct known falsehoods in police and prosecutorial paperwork; and

(f) using litigation positions to legitimize and republish falsified information.

**122.**

These customs were persistent, deeply embedded within NYPD, KCDAO, and Corporation Counsel practices, and so widespread as to constitute de facto municipal policy.

**123.**

The City knew or reasonably should have known that these practices would predictably result in constitutional violations, including the deprivation of liberty and property interests of citizens like Plaintiff.

## III. Policymaker Ratification

**124.**

Final policymakers within the Corporation Counsel, including **Goode-Trufant** and **Zangrilli,** knowingly ratified the fabricated felony narrative by:

(a) approving false Rule 11 filings;

(b) maintaining litigation positions contradicted by the City's own records;

(c) refusing to correct or withdraw false statements after receiving notice;

(d) authorizing subordinates to repeat and defend the fabricated narrative; and

(e) rejecting opportunities to acknowledge or remedy constitutional violations.

**125.**

Policymaker ratification constitutes a separate and independent basis for municipal liability under *Monell,* as their approvals transformed individual misconduct into official municipal acts.

**126.**

This ratification was deliberate, informed, and connected directly to the ongoing harms inflicted on Plaintiff.

## IV. Municipal Failure to Train and Supervise

**127.**

The City failed to adequately train, supervise, and monitor its municipal attorneys on their obligations to:
(a) verify factual assertions before certifying them under Rule 11;
(b) distinguish between sealed cases and nonexistent cases;
(c) ensure factual accuracy when representing the City in federal court;
(d) correct known falsehoods in public filings; and
(e) avoid perpetuating unconstitutional police or prosecutorial misconduct.

**128.**

This failure to train demonstrates **deliberate indifference**, because:
(a) the need to avoid fabricated criminal allegations is obvious;
(b) the risk of constitutional harm from false filings is well-established;
(c) municipal attorneys handle highly sensitive civil rights litigation; and
(d) the City had notice, through repeated civil rights cases, of systemic deficiencies in training and supervision.

**129.**

The City's failure to supervise municipal attorneys allowed false narratives to be certified and published as municipal fact, directly causing Plaintiff's loss of reputation, business goodwill, and regulatory standing.

## V. Causation of Plaintiff's Injuries

**130.**

As a direct and foreseeable result of the City's policies, practices, ratifications, and failures to train:
(a) the fabricated felony narrative was created, repeated, and legitimized;
(b) municipal filings republished false criminal allegations about Plaintiff;
(c) online platforms and regulators relied on the City's statements;
(d) Plaintiff's businesses suffered financial, reputational, and operational damage;
(e) Plaintiff suffered constitutional deprivations of her **liberty** (stigma-plus) and **property interests** (business goodwill, licensing, client relationships); and
(f) Plaintiff suffered emotional distress, humiliation, and professional disruption.

**131.**

The City's deliberate indifference, combined with its official adoption of false narratives, constitutes the moving force behind Plaintiff's constitutional injuries and entitles Plaintiff to compensatory, injunctive, declaratory, and punitive-equivalent municipal remedies where permitted by law.

## VI. Entitlement to Relief

**132.**
Plaintiff is entitled to judgment against the City of New York under 42 U.S.C. § 1983, including:
(a) compensatory damages for economic and reputational loss;
(b) injunctive relief requiring correction, withdrawal, and retraction of false municipal filings;
(c) declaratory relief establishing the City's violations of Plaintiff's constitutional rights; and
(d) attorney's fees and costs under 42 U.S.C. § 1988.

---

## SECOND CAUSE OF ACTION

## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT LIBERTY DEPRIVATION**

("Stigma-Plus" Constitutional Defamation)
Against All Defendants**

**133.**
Plaintiff repeats and realleges paragraphs 1 through 132 as if fully set forth herein.

**134.**
The Fourteenth Amendment protects a liberty interest in one's good name, reputation, and ability to pursue a chosen occupation free from **official government defamation** coupled with a **tangible alteration of legal status or property interest**. This is the "stigma-plus" doctrine recognized by the Supreme Court and consistently applied by the Second Circuit.

**135.**
Defendants, acting under color of state law, **fabricated, published, and repeatedly ratified** a false felony narrative asserting that Plaintiff was involved in or benefited from "deed fraud," "forgery," or a criminal "$10 property transfer" — statements that were wholly unsupported by evidence and demonstrably false.

---

## I. The "Stigma" Element — Government-Created and Government-Published False Statements

**136.**
NYPD Defendants, KCDAO personnel, and private defendants acting jointly with state officials generated and circulated false statements alleging that Plaintiff was associated with felony real estate fraud. These statements were entered into NYPD records, KCDAO materials, internal municipal systems, and were repeatedly referenced in communications with other agencies.

**137.**
Corporation Counsel Defendants then **strengthened and formalized** this stigma by filing **Rule 11–certified federal court submissions** that:
(a) repeated the fabricated felony allegations;
(b) asserted that Plaintiff's spouse was arrested and arraigned for a felony involving Plaintiff;
(c) claimed judicial proceedings existed where none had ever occurred; and
(d) presented these falsehoods as established municipal fact.

**138.**
These municipal filings constitute **official government publications** of defamatory statements,

satisfying the "stigma" element of the doctrine. They were public, searchable, and accessible to regulators, clients, licensing authorities, and the broader community.

**139.**
The City's publications were accompanied by the official weight of Rule 11 certification, making them more damaging, more credible to third parties, and significantly more injurious to Plaintiff than private defamation.

## II. The "Plus" Element — Tangible Alteration of Legal Status, Property Interests, and Professional Rights

**140.**
Defendants' official publications caused a **material deprivation of Plaintiff's property interests**, including:
(a) the goodwill and reputation of her regulated mortgage brokerage and accounting businesses;
(b) ongoing financial losses resulting from client withdrawal;
(c) damage to her professional credibility;
(d) interference with her contractual relationships; and
(e) impairment of her legal right to pursue her profession free from unfounded government-created stigma.

**141.**
The defamatory allegations also triggered **DFS regulatory attention**, jeopardizing Plaintiff's licensing, compliance standing, and institutional relationships essential to operating a mortgage brokerage in New York State.

**142.**
The combination of reputational stigma and economic loss constitutes the required "plus," as Plaintiff's business operations were impaired, her regulatory status was threatened, and her professional rights were materially burdened.

**143.**
These harms were not incidental. They were the **direct and foreseeable result** of Defendants' actions, especially the City's Rule 11 certifications and ongoing refusal to correct false filings.

## III. Ongoing Publication Constitutes a Continuing Constitutional Violation

**144.**
The City continues to maintain and disseminate the false felony narrative through uncorrected filings in federal court. Each day these filings remain publicly accessible constitutes a **new publication** of defamatory statements and a **new constitutional injury** to Plaintiff.

**145.**
This ongoing publication ensures that Plaintiff continues to suffer reputational damage, client loss, business interruption, and regulatory scrutiny. The continuing nature of the violation supports both **damages** and **injunctive relief.**

## IV. No Process, No Hearing, No Opportunity to Refute — Procedural Due Process Violations

**146.**
Defendants deprived Plaintiff of her liberty interest **without any process whatsoever**. Plaintiff:
(a) was never notified of the allegations;
(b) was never interviewed, questioned, or contacted;
(c) was never provided an opportunity to clear her name; and
(d) was never afforded any form of judicial or administrative review.

**147.**
The City's subsequent publication and ratification of the fabricated narrative occurred **long after** it knew or should have known that no judicial process existed, compounding the due process violation.

## V. Liability of All Defendant Classes

**148.**
Each defendant class contributed to the stigma-plus violation:

- **NYPD Defendants** created the false criminal narrative;

- **KCDAO personnel** suppressed exculpatory information;

- **Corporation Counsel** published and certified the false narrative, infusing it with municipal authority;

- **Supervisory policymakers** ratified the falsehoods;

- **Private defendants** conspired with state actors to promote and revive the fabricated allegations.

**149.**
Together, these actions constitute a deprivation of Plaintiff's Fourteenth Amendment liberty interest through the imposition of stigma paired with tangible, ongoing professional and economic harm.

## VI. Entitlement to Relief

**150.**
As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:
(a) loss of business income;
(b) damage to corporate goodwill;
(c) loss of clients and professional opportunities;
(d) harm to her mortgage licensing status;
(e) emotional distress and reputational injury; and
(f) continuing constitutional deprivation.

**151.**
Plaintiff is entitled to compensatory damages, injunctive relief requiring correction of the

municipal record, declaratory relief recognizing the constitutional violation, and attorney's fees pursuant to **42 U.S.C. § 1988**.

---

## THIRD CAUSE OF ACTION

## **\*\*42 U.S.C. § 1983 — FOURTEENTH AMENDMENT**

DEPRIVATION OF PROPERTY INTERESTS WITHOUT DUE PROCESS
Against All Defendants\*\*

**152.**
Plaintiff repeats and realleges paragraphs 1 through 151 as if fully set forth herein.

**153.**
The Fourteenth Amendment protects citizens from the deprivation of **property interests** without due process of law. Property interests include not only physical property, but also **business goodwill**, **professional licensing status**, **client relationships**, **economic livelihood**, and the right to pursue a chosen occupation free from arbitrary government interference.

**154.**
Plaintiff possesses multiple legally recognized property interests, including:
(a) the goodwill, reputation, and economic value of her companies—GCT Mortgage Brokers, LLC and Ellis, Maynard, Walwyn, LLC;
(b) her existing client relationships and business expectancies;
(c) her professional credibility as a licensed mortgage broker and financial service provider;
(d) her standing with the New York State Department of Financial Services ("DFS"); and
(e) her ability to operate regulated businesses without state-created stigma or fabricated allegations impairing her professional capacity.

**155.**
These interests have long been recognized as "property" under federal law, and their deprivation by state actors requires advance notice, meaningful opportunity to be heard, and fundamentally fair procedures. Plaintiff received none.

---

## I. Defendants Deprived Plaintiff of Protected Property Interests

**156.**
Defendants deprived Plaintiff of these property interests by fabricating, publishing, and repeatedly ratifying a false felony narrative, which:
(a) damaged her business reputation and goodwill;
(b) caused clients to terminate or avoid business relationships;
(c) harmed her mortgage license standing and prompted DFS scrutiny;
(d) interfered with contract expectancies and income streams; and
(e) impaired her ability to conduct her chosen profession free from defamatory criminal allegations.

**157.**
These deprivations were direct, substantial, and economically significant. Plaintiff experienced real monetary loss, lost professional opportunities, diminished business prospects, and long-term reputational and licensing harm.

## II. No Procedural Safeguards Were Provided

**158.**

Plaintiff was deprived of these property interests **without any process whatsoever**. Specifically:

(a) she was never notified that NYPD or KCDAO had linked her name to alleged criminal activity;

(b) she was never interviewed or allowed to provide exculpatory information;

(c) she was never provided an opportunity to challenge the fabricated allegations;

(d) she was never given access to the supposed "records" or "sealed case" that municipal actors claimed existed; and

(e) no judicial process ever occurred because no case, no arrest, and no arraignment had ever taken place.

**159.**

Defendants' conduct therefore violated fundamental procedural due process requirements. By depriving Plaintiff of property interests without notice, hearing, or any opportunity to rebut the false allegations, Defendants acted arbitrarily and unconstitutionally.

## III. Municipal Misconduct Deepened and Perpetuated the Property Deprivation

**160.**

The deprivation of Plaintiff's property interests was **significantly amplified** when the **Corporation Counsel of the City of New York** repeated and certified the fabricated felony narrative in official Rule 11 filings in federal court, thereby legitimizing the false allegations as municipal fact.

**161.**

These public filings caused search engines, regulators, clients, and financial institutions to rely on the City's assertions, leading to continued business loss, professional harm, and regulatory consequences.

**162.**

The City's policymaker-level ratification of these falsehoods transformed the deprivation into an ongoing constitutional violation. Because municipal attorneys refused to correct or withdraw their false filings, Plaintiff continues to lose clients, business opportunities, and goodwill.

## IV. Ongoing Injury Constitutes a Continuing Due Process Violation

**163.**

The City's continued publication of fabricated felony allegations in publicly accessible filings constitutes a **continuing deprivation** of Plaintiff's property interests. Each day the City maintains these filings, Plaintiff suffers new economic and reputational harm.

**164.**

DFS, financial institutions, and prospective clients routinely review public filings and background information. Because the City has preserved the false narrative, Plaintiff remains unable to fully restore her professional standing or business operations.

**165.**

This ongoing violation entitles Plaintiff to **prospective injunctive relief,** including correction or withdrawal of false filings.

## V. State Action and Municipal Liability

**166.**

All defendants acted under color of state law. Their actions were:

(a) undertaken in the course of their official duties;

(b) ratified by municipal policymakers;

(c) reflective of municipal customs and practices; and

(d) executed through official government channels, including NYPD reports, KCDAO communications, and Corporation Counsel filings.

**167.**

The City is liable under § 1983 because Plaintiff's property-interest deprivation was caused by:

(a) municipal policies of defending fabricated criminal allegations;

(b) customs of suppressing exculpatory information and misusing sealing statutes;

(c) policymaker ratification of false filings; and

(d) systemic failures to train or supervise municipal attorneys regarding their constitutional obligations.

## VI. Entitlement to Relief

**168.**

As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff has suffered and continues to suffer:

(a) loss of revenue;

(b) loss of clients and professional opportunities;

(c) harm to her mortgage licensing and regulatory standing;

(d) diminished business reputation and goodwill;

(e) emotional distress; and

(f) substantial economic and constitutional injury.

**169.**

Plaintiff is entitled to compensatory damages, declaratory relief, injunctive relief mandating correction of public records, and attorney's fees under **42 U.S.C. § 1988.**

## FOURTH CAUSE OF ACTION

## **42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

Against All Defendants**

**170.**

Plaintiff repeats and realleges paragraphs 1 through 169 as if fully set forth herein.

**171.**

The First Amendment to the United States Constitution protects an individual's right to speak

freely, petition the government, seek information from public agencies, and object to governmental misconduct without fear of retaliation by state actors.

**172.**
At all relevant times, Plaintiff engaged in **constitutionally protected activity**, including but not limited to:
(a) objecting to and disputing the fabricated allegations created by NYPD and KCDAO;
(b) seeking records and information through formal complaints and inquiries;
(c) assisting in efforts to obtain exculpatory evidence and expose governmental misconduct;
(d) challenging the City's false assertions regarding nonexistent judicial proceedings;
(e) providing notice to the City of the harms caused by municipal falsehoods; and
(f) asserting her rights and the rights of her businesses through lawful advocacy and petitioning.

**173.**
Defendants were aware of Plaintiff's protected activities. Corporation Counsel received multiple communications, filings, exhibits, and Safe Harbor notices explaining the falsity of the City's narrative and objecting to the ongoing publication of defamatory municipal filings.

## I. Defendants Took Adverse Actions in Retaliation for Plaintiff's Protected Speech

**174.**
After Plaintiff engaged in protected activity, Defendants — including municipal policymakers — undertook a series of **retaliatory actions**, including:
(a) continuing to maintain, publish, and certify the fabricated felony narrative despite knowing it was false;
(b) refusing to correct, amend, or withdraw Rule 11 filings containing defamatory allegations;
(c) doubling down on false litigation positions even after receiving irrefutable documentary evidence;
(d) republishing the fabricated narrative in subsequent filings to intimidate, silence, or punish Plaintiff; and
(e) suppressing exculpatory information and misleading Plaintiff regarding non-existent "sealed records" to obstruct her ability to challenge the false allegations.

**175.**
These retaliatory actions were **adverse** within the meaning of the First Amendment because they would deter a person of ordinary firmness from continuing to engage in protected speech, petitioning, and advocacy.

**176.**
The City's refusal to correct its false filings, even after being put on notice, was not an oversight but a **deliberate retaliatory act**, intended to discredit Plaintiff, preserve the false narrative, and chill further protected activity challenging official misconduct.

## II. Plaintiff's Protected Activity Was a Substantial Motivating Factor

**177.**
Defendants' retaliatory actions were substantially motivated by Plaintiff's protected speech and petitioning activity, including her efforts to expose the fabrication, request records, and challenge municipal falsehoods.

**178.**
Temporal proximity, escalating municipal hostility, and the City's repeated decisions to reaffirm false allegations **after** receiving Plaintiff's objections are strong indicators of retaliatory motive.

**179.**
Corporation Counsel's decision to republish and re-certify the fabricated felony narrative—despite documentation proving no judicial process existed—demonstrates intentional retaliation designed to punish Plaintiff for asserting her rights.

## III. Defendants' Actions Lacked Any Legitimate Government Interest

**180.**
Defendants' retaliatory conduct served **no legitimate governmental purpose**.
There was no law enforcement investigation, no active prosecution, no judicial proceeding, and no lawful basis for maintaining or publishing fabricated criminal allegations.

**181.**
The only effect of Defendants' actions was to suppress dissent, discredit Plaintiff, protect municipal liability positions, and deter further challenges to governmental misconduct.

**182.**
A municipality's interest can never lawfully extend to perpetuating falsehoods or punishing citizens for exercising their First Amendment rights.

## IV. Defendants Acted Under Color of State Law

**183.**
All Defendants acted under color of state law, including:
(a) Corporation Counsel attorneys filing Rule 11-certified submissions;
(b) NYPD officers creating and maintaining fabricated records;
(c) KCDAO officials suppressing exculpatory information; and
(d) municipal policymakers ratifying the false narrative.

**184.**
These acts constitute state action for purposes of 42 U.S.C. § 1983, and municipal liability attaches through both policymaker ratification and Monell standards.

## V. Plaintiff Suffered First Amendment Injury and Damages

**185.**
As a result of Defendants' retaliatory actions, Plaintiff suffered and continues to suffer:
(a) ongoing reputational injury;
(b) loss of clients and business opportunities;
(c) economic damage;
(d) DFS regulatory consequences;
(e) emotional distress; and
(f) chilling effects on her willingness to speak, petition, and advocate against government misconduct.

**186.**
These harms were the direct and proximate result of Defendants' unconstitutional conduct.

## VI. Entitlement to Relief

**187.**
Plaintiff is entitled to judgment against all Defendants for First Amendment retaliation, including:
(a) compensatory damages;
(b) injunctive relief requiring the City to correct and retract false filings;
(c) declaratory relief recognizing the retaliation; and
(d) attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

## **42 U.S.C. § 1983 — CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

Against All Defendants**

**188.**
Plaintiff repeats and realleges paragraphs 1 through 187 as if fully set forth herein.

**189.**
Under 42 U.S.C. § 1983, a conspiracy exists when two or more persons act in concert, under color of state law, to deprive a person of constitutional rights. Such conspiracies may include private individuals who jointly participate with state actors in unlawful acts.

**190.**
Defendants—including NYPD officials, KCDAO personnel, Corporation Counsel attorneys, and private actors **Lynn Jerome**, **Paula Sinclair**, and **Daniel Friedman, Esq.**—entered into an agreement, explicit or tacit, to fabricate criminal allegations, suppress exculpatory information, republish known falsehoods, and inflict injury upon Plaintiff's liberty and property interests.

## I. Agreement and Meeting of the Minds

**191.**
The conspiracy began when private defendants Jerome and Sinclair knowingly fabricated allegations relating to deed fraud and falsely identified Plaintiff as a supposed beneficiary of the alleged criminal conduct.

**192.**
NYPD Defendants—including Detective Greene Kush, Sgt. Evan Couch, PO Paul H. Alva, PO Karisa Crawford, and Sgt. Joseph Piscatella—**accepted these false allegations without investigation**, created a fabricated felony narrative, and incorporated Plaintiff into police records as connected to criminal wrongdoing.

**193.**
KCDAO personnel—including ADA Richard Farrell and ADA John Carroll—**adopted the

**fabricated narrative**, suppressed exculpatory information contradicting it, and relied on the false allegations to justify a nonexistent criminal case.

**194.**

Corporation Counsel attorneys—including policymaker-level defendants Muriel Goode-Trufant and Joseph Zangrilli—**joined the conspiracy** by adopting the fabricated allegations as municipal fact and republishing them in **Rule 11–certified filings,** knowing such filings would publicly brand Plaintiff as connected to felony fraud.

**195.**

The private defendants, NYPD, KCDAO, and Corporation Counsel actors shared a **common purpose**:
(a) to legitimize the fabricated felony narrative;
(b) to shield municipal actors from liability;
(c) to advance the false narrative in civil litigation; and
(d) to silence Plaintiff and diminish her credibility, reputation, and business interests.

## II. Overt Acts in Furtherance of the Conspiracy

**196.**

In furtherance of the conspiracy, Defendants engaged in multiple overt acts, including:
(a) creating fabricated police records naming Plaintiff as connected to alleged felony conduct;
(b) suppressing or ignoring exculpatory evidence disproving the allegations;
(c) misrepresenting the existence of judicial proceedings, arrest records, and sealing orders;
(d) filing false Rule 11–certified submissions in federal court that adopted and republished fabricated allegations;
(e) repeating the false narrative in civil litigation to advance defendants' interests;
(f) obstructing Plaintiff's attempts to obtain accurate records by falsely alleging "sealed cases";
(g) refusing to correct false statements after receiving proof of falsity; and
(h) enabling online and regulatory dissemination of the defamatory falsehoods that harmed Plaintiff's businesses.

**197.**

These overt acts were performed knowingly, deliberately, and in coordinated fashion, and each act contributed to the constitutional violations suffered by Plaintiff.

## III. Purpose and Effect of the Conspiracy

**198.**

The purpose of the conspiracy was to:
(a) fabricate and perpetuate a false felony narrative;
(b) defame Plaintiff and destroy her business reputation;
(c) interfere with her property interests and economic livelihood;
(d) legitimize unlawful municipal conduct;
(e) conceal the lack of judicial process; and
(f) obstruct Plaintiff's ability to challenge official misconduct.

**199.**

The conspiracy succeeded in achieving these unlawful objectives. Defendants caused Plaintiff to suffer:
(a) reputational injury;
(b) business losses;
(c) DFS scrutiny;
(d) emotional distress;
(e) deprivation of her liberty and property interests; and
(f) chilling of her First Amendment rights.

## IV. State Action Requirement Satisfied

**200.**

Although private defendants Jerome, Sinclair, and Friedman are not government officials, they are liable under § 1983 because they **acted jointly with state actors** and participated in coordinated efforts that relied on governmental authority, processes, and misrepresentations.

**201.**

The conspiracy involved extensive participation by NYPD, KCDAO, and Corporation Counsel actors, all of whom acted under color of state law. Their collective actions satisfy the state action requirement of § 1983.

## V. Municipal Liability

**202.**

The conspiracy was ratified, endorsed, and perpetuated by municipal policymakers, making the City of New York liable under *Monell*. The conspiracy operated through official channels including NYPD systems, KCDAO communications, and federal court filings submitted by Corporation Counsel.

## VI. Constitutional Deprivations Resulting From the Conspiracy

**203.**

As a direct and foreseeable result of the conspiracy, Plaintiff was deprived of:
(a) her Fourteenth Amendment liberty interest in her reputation (stigma-plus);
(b) her Fourteenth Amendment property interests in business goodwill, client relationships, and licensing status;
(c) her First Amendment rights to speak and petition without retaliation; and
(d) her right to procedural and substantive due process.

## VII. Entitlement to Relief

**204.**

Plaintiff is entitled to judgment against all Defendants, including private actors, for conspiring to violate her constitutional rights, and to recover:
(a) compensatory damages;
(b) punitive damages against individual defendants where permitted;

(c) injunctive relief requiring correction of the municipal record;

(d) declaratory relief; and

(e) attorney's fees and costs under 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION

## **42 U.S.C. § 1985(3) — CIVIL RIGHTS CONSPIRACY**

Against All Defendants**

**205.**

Plaintiff repeats and realleges paragraphs 1 through 204 as if fully set forth herein.

**206.**

Under 42 U.S.C. § 1985(3), it is unlawful for two or more persons to conspire for the purpose of depriving a person or class of persons of equal protection of the laws or equal privileges and immunities under the laws, and to commit acts in furtherance of the conspiracy that result in injury to the person or property of the targeted individual.

**207.**

Defendants—including NYPD officers, KCDAO personnel, Corporation Counsel attorneys, and private actors Jerome, Sinclair, and Friedman—entered into an agreement, express or tacit, to fabricate, maintain, republish, and legitimize a false felony narrative for the purpose of injuring Plaintiff's reputation, property interests, and ability to conduct her businesses.

## I. Purpose of the Conspiracy — Deprivation of Equal Protection and Property Rights

**208.**

The purpose of the conspiracy was to:

(a) deprive Plaintiff of her constitutional liberty and property interests;

(b) destroy her professional and business reputation;

(c) deprive her of equal protection by fabricating criminal allegations without investigation;

(d) cause economic harm and DFS regulatory consequences;

(e) obstruct her access to truthful governmental information; and

(f) prevent her from pursuing her livelihood free from state-created stigma.

**209.**

Defendants acted with **animus**, retaliatory motive, and coordinated intent to target Plaintiff through false criminal allegations and public defamatory publications that would foreseeably harm her businesses, economic livelihood, and professional standing.

## II. Agreement and Joint Action Between State and Private Actors

**210.**

Private defendants Jerome and Sinclair initiated the conspiracy by knowingly fabricating criminal allegations and presenting them to NYPD with the intent that the allegations be adopted and weaponized through state authority.

**211.**

NYPD Defendants—including Detective Greene Kush, Sgt. Evan Couch, PO Paul Alva, PO Karisa Crawford, and Sgt. Piscatella—agreed to participate by accepting the fabricated allegations without investigation, drafting false police records, and incorporating Plaintiff's name into the false narrative as a supposed participant or beneficiary.

**212.**

KCDAO Defendants—including ADA Farrell and ADA Carroll—furthered the conspiracy by suppressing exculpatory evidence, maintaining the fabricated narrative, and misrepresenting the existence of judicial process and "sealed" records.

**213.**

Corporation Counsel Defendants—acting through policymaker-level individuals including Muriel Goode-Trufant and Joseph Zangrilli—joined the conspiracy by adopting the fabricated allegations as municipal fact, repeating them in **Rule 11–certified filings**, and refusing to correct false statements despite having actual notice of their falsity.

**214.**

Defendant Daniel Friedman, Esq. contributed to the conspiracy by filing civil pleadings in state court that repeated allegations he knew were false and that were already contradicted by evidence and prior recantations. Friedman was also told by Investor Wayne Wilson's Attorney Stewart Rosenblum Esq. his clients have recanted their allegations to ADA Richard Farrell and Notary Diego Santacruz also told ADA Richard Farrell he notarized the said deed and Acris Documents and neither Wayne Wilson nor Gilbert Ellis was present. Notary also provided Notary Log to ADA Farrell denoting who was present at the deed closing.

**215.**

All defendants worked in concert to achieve the common unlawful goal: maintaining, legitimizing, and amplifying a fabricated felony narrative to injure Plaintiff's liberty, property, and professional rights.

## III. Overt Acts Committed in Furtherance of the Conspiracy

**216.**

The conspirators undertook numerous overt acts, including:
(a) fabricating police and prosecutorial documents;
(b) entering false allegations into NYPD systems;
(c) suppressing exculpatory evidence;
(d) misrepresenting the existence of judicial proceedings and sealing orders;
(e) filing false Rule 11–certified submissions in federal court;
(f) publishing and republishing defamatory statements with government authority;
(g) repeating the fabricated narrative in civil litigation;
(h) obstructing Plaintiff's attempts to obtain accurate records; and
(i) enabling the online and regulatory dissemination of the false allegations.

**217.**

Each overt act furthered the conspiracy's goal of damaging Plaintiff's business reputation, undermining her professional credibility, and causing financial and regulatory harm.

## IV. Injuries Resulting from the Conspiracy

**218.**

As a direct and foreseeable result of Defendants' concerted actions, Plaintiff suffered:

(a) loss of clients and business opportunities;

(b) DFS scrutiny impacting mortgage licensing and compliance;

(c) reputational destruction;

(d) economic loss;

(e) deprivation of her liberty and property interests under the Fourteenth Amendment; and

(f) ongoing injury through continuous republication of the fabricated allegations.

**219.**

These harms were the intended and predictable consequences of Defendants' collective efforts.

## V. Municipal Liability for the § 1985(3) Conspiracy

**220.**

The City of New York is liable because municipal policymakers—including Corporation Counsel leadership—**ratified and advanced** the conspiracy through official filings, deliberate repetitions of the fabricated narrative, and purposeful omissions designed to conceal the lack of judicial process.

**221.**

Because the conspiracy was aided, endorsed, and propagated through official municipal channels—NYPD systems, KCDAO acts, and Corporation Counsel filings—the City bears responsibility under *Monell* for its role in depriving Plaintiff of equal protection and property rights.

## VI. Entitlement to Relief

**222.**

Plaintiff is entitled to judgment against all Defendants for violating 42 U.S.C. § 1985(3), and to recover:

(a) compensatory damages for economic and constitutional injuries;

(b) punitive damages against individual conspirators;

(c) injunctive relief requiring correction of public filings and elimination of false records;

(d) declaratory relief recognizing the conspiracy; and

(e) attorney's fees and costs under 42 U.S.C. § 1988.

## SEVENTH CAUSE OF ACTION

## **42 U.S.C. § 1986 — NEGLECT TO PREVENT CONSPIRACY**

Against All Defendants with Knowledge and Authority to Intervene**

**223.**

Plaintiff repeats and realleges paragraphs 1 through 222 as if fully set forth herein.

**224.**
Under 42 U.S.C. § 1986, any person who knows that a §1985(3) conspiracy is about to be committed, or is being committed, and who possesses the power to prevent or aid in preventing the wrongful acts, and who neglects or refuses to do so, is liable for all damages caused by such conspiracy.

**225.**
As set forth in the preceding causes of action, Defendants engaged in a **§1985(3) civil rights conspiracy** to deprive Plaintiff of equal protection of the laws, liberty, and property interests, and to inflict economic and reputational injury by fabricating, maintaining, and republishing false criminal allegations.

## I. Defendants With Actual Knowledge of the Conspiracy

**226.**
Multiple defendants possessed **actual knowledge** that the fabricated felony narrative was false, unlawful, and being used to injure Plaintiff, including:
(a) **Corporation Counsel policymakers Muriel Goode-Trufant and Joseph Zangrilli**, who reviewed and approved filings containing falsified criminal allegations;
(b) **Assistant Corporation Counsel Hannah Oleynik**, who filed Rule 11–certified submissions despite access to contradictory exculpatory evidence;
(c) **ADA John Carroll**, who falsely asserted the existence of sealed judicial records he knew did not exist;
(d) **ADA Richard Farrell**, who accepted and maintained the fabricated allegations without verifying them;
(e) **supervising NYPD officials**, including Sgt. Evan Couch and Sgt. Joseph Piscatella, who approved or processed false police documents; and
(f) **civil attorney Daniel Friedman**, who repeated allegations in pleadings despite knowing the complainants had recanted or contradicted their prior statements.

**227.**
Each of these defendants had knowledge that the conspiracy to defame, injure, and economically harm Plaintiff was ongoing, and that municipal and private actors were continuing to propagate the false narrative.

## II. Defendants Had the Power and Duty to Prevent Further Harm

**228.**
Defendants in policymaking, supervisory, and legal positions possessed the **authority and ability** to prevent further constitutional harm to Plaintiff by:
(a) correcting or retracting false filings;
(b) withdrawing fabricated allegations from NYPD or KCDAO systems;
(c) disclosing the absence of judicial proceedings;
(d) stopping continued publication of false statements;
(e) producing exculpatory records to discredit the fabricated narrative;
(f) refusing to sign or approve filings they knew were false;
(g) disciplining subordinates who propagated the falsehoods; or
(h) informing relevant regulatory bodies of the falsity of the allegations.

**229.**

Instead of using their authority to prevent continued injury, each of these defendants chose to remain silent, to approve further wrongdoing, or to actively reinforce the conspiracy's objectives.

## III. Defendants Neglected and Refused to Prevent the Conspiracy

**230.**

Despite possessing actual knowledge and the ability to intervene, Defendants **neglected to prevent** or mitigate the ongoing conspiracy. Their failures included:

(a) choosing not to correct municipal filings even after receiving Safe Harbor notice and documentary evidence;

(b) allowing false allegations to remain in active NYPD and KCDAO systems;

(c) misrepresenting nonexistent "sealed" records to block Plaintiff's access to exculpatory information;

(d) approving or filing additional pleadings repeating the fabricated narrative;

(e) refusing to discipline or correct subordinates engaged in misconduct;

(f) ignoring Plaintiff's objections, disclosures, and appeals for accuracy; and

(g) failing to take any step that would have slowed or stopped the conspiracy or reduced its harmful effects.

**231.**

This neglect was not inadvertent—Defendants made **deliberate choices** to allow the conspiracy to proceed so as to protect their own interests, shield the City from liability, and suppress Plaintiff's ability to challenge the false narrative.

## IV. Causation — Plaintiff's Injuries Resulted From Defendants' Neglect

**232.**

As a direct and proximate consequence of Defendants' neglect, Plaintiff suffered:

(a) ongoing reputational injury;

(b) continuing business loss and reduced revenue;

(c) impairment of her mortgage licensing and DFS standing;

(d) loss of clients and contractual relationships;

(e) deprivation of her liberty interest (stigma-plus);

(f) deprivation of her property interests without due process;

(g) emotional distress; and

(h) persistent harm resulting from the City's continued publication and ratification of false felony allegations.

**233.**

Had Defendants fulfilled their duty to intervene and prevent the conspiracy, Plaintiff would not have suffered—nor continue to suffer—the constitutional injuries described herein.

## V. Entitlement to Relief

**234.**

Pursuant to 42 U.S.C. § 1986, Plaintiff is entitled to judgment against these Defendants for neglecting to prevent the §1985(3) conspiracy, and to recover:

(a) compensatory damages for constitutional and economic injuries;
(b) punitive damages against individual defendants where permitted;
(c) injunctive relief ordering correction and withdrawal of false filings;
(d) declaratory relief recognizing Defendants' unlawful neglect; and
(e) attorney's fees and costs under 42 U.S.C. § 1988.

## EIGHTH CAUSE OF ACTION

## **42 U.S.C. § 1983 — FAILURE TO INTERVENE

Against All Individual Defendants**

### 235.
Plaintiff repeats and realleges paragraphs 1 through 234 as if fully set forth herein.

### 236.
Under § 1983, an officer, attorney, or government official who has knowledge of a constitutional violation, has a realistic opportunity to intervene and prevent such violation, and fails to do so, is liable for the resulting harm.

### 237.
At all relevant times, numerous individual defendants—including NYPD officers, KCDAO personnel, and Corporation Counsel attorneys—had actual knowledge that Plaintiff's constitutional rights were being violated through the fabrication, publication, and ratification of false felony allegations, yet deliberately failed to intervene.

## I. Defendants Had Actual Knowledge of the Constitutional Violations

### 238.
NYPD Defendants—including Detective Greene Kush, Sgt. Evan Couch, PO Paul Alva, PO Karisa Crawford, and Sgt. Joseph Piscatella—knew:
(a) the underlying allegations were uninvestigated and unsupported;
(b) Plaintiff had no involvement in any alleged wrongdoing;
(c) no judicial process existed; and
(d) the false narrative would be disseminated and used to justify municipal action.

### 239.
KCDAO personnel—including ADA Richard Farrell and ADA John Carroll—knew:
(a) no felony case had been filed;
(b) no arraignment or prosecution had occurred;
(c) "sealing" assertions were false;
(d) exculpatory information contradicted the fabricated allegations; and
(e) Plaintiff was suffering reputational and economic harm as a result.

### 240.
Corporation Counsel attorneys—including **policymakers** Muriel Goode-Trufant, Joseph Zangrilli, and Assistant Corporation Counsel Hannah Oleynik—had actual knowledge that:
(a) the fabricated felony narrative was untrue;
(b) Rule 11 filings contained false statements about nonexistent judicial proceedings;
(c) the City's position perpetuated ongoing constitutional harm to Plaintiff; and

(d) Plaintiff had expressly provided notice, exhibits, and Safe Harbor warnings demonstrating the falsity of the City's narrative.

## II. Defendants Had the Ability and Duty to Intervene

**241.**

Each defendant had the **realistic ability** to intervene and prevent further constitutional harm by:
(a) correcting or retracting false allegations;
(b) preventing the submission of false Rule 11 filings;
(c) refusing to approve or sign off on fabricated reports;
(d) producing exculpatory evidence;
(e) contacting search engines or regulatory agencies to correct misinformation;
(f) disciplining subordinates;
(g) clarifying the absence of judicial process; or
(h) ceasing dissemination of false municipal filings.

**242.**

Each defendant also had a **duty to intervene** under § 1983 because the constitutional violations were clear, ongoing, and repeatedly brought to their attention.

## III. Defendants Deliberately Chose Not to Intervene

**243.**

Despite knowing of the ongoing violations and possessing authority to stop them, Defendants deliberately refused to intervene. Instead, they:
(a) allowed false NYPD records to stand;
(b) permitted suppression of exculpatory facts;
(c) approved, drafted, and filed Rule 11–certified misrepresentations;
(d) misled Plaintiff about the existence of sealing orders;
(e) maintained and republished defamatory allegations; and
(f) allowed the fabricated narrative to be used by regulators, online platforms, and third parties.

**244.**

This conscious refusal to intervene was not negligent or accidental; it was a **deliberate choice**, motivated by self-protection, institutional loyalty, and intent to preserve a false official narrative at Plaintiff's expense.

## IV. Harm Resulting from the Failure to Intervene

**245.**

As a direct and proximate result of Defendants' failures to intervene, Plaintiff suffered:
(a) ongoing reputational injury;
(b) loss of business income and clients;
(c) DFS scrutiny impacting her licensing status;
(d) damage to her companies' goodwill;
(e) economic injury;
(f) emotional distress; and
(g) deprivation of her liberty (stigma-plus) and property interests without due process.

**246.**
These harms persist because Defendants continue to refuse to correct false filings and continue to allow the fabricated narrative to circulate publicly.

## V. Municipal Context and Supervisory Liability

**247.**
Corporation Counsel supervisors and NYPD sergeants who declined to intervene enabled the constitutional violations to continue and expand. Their failure constitutes participation in the violations under § 1983 and strengthens Monell liability.

**248.**
Because policymaker-level attorneys ratified subordinates' misconduct and refused to intervene, their omissions bind the City under *Monell*.

## VI. Entitlement to Relief

**249.**
Plaintiff is entitled to judgment against all individual defendants for failing to intervene to prevent constitutional violations, including:
(a) compensatory damages;
(b) punitive damages against individual defendants where permitted;
(c) injunctive relief requiring correction or withdrawal of municipal misstatements;
(d) declaratory judgment recognizing Defendants' unconstitutional omissions; and
(e) attorney's fees under 42 U.S.C. § 1988.

## DAMAGES

**250.**
Plaintiff repeats and realleges paragraphs 1 through 249 as if fully set forth herein.

## I. Compensatory Damages — Economic Loss to Plaintiff's Businesses

**251.**
As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff suffered substantial and measurable **economic damages** to her two businesses, **GCT Mortgage Brokers, LLC** and **Ellis, Maynard, Walwyn, LLC**, including:

(a) **loss of existing clients** who terminated relationships after seeing defamatory allegations published or ratified by the City;
(b) **loss of prospective clients and revenue**, as individuals and businesses refrained from engaging Plaintiff due to concerns about her supposed connection to felony activity;
(c) **reduction in loan volume, commissions, and advisory income** resulting from reputational damage;
(d) **disruption of banking and financial-institution relationships** essential to Plaintiff's mortgage brokerage operations; and

(e) **decline in business goodwill**, which constitutes a federally protected property interest under the Fourteenth Amendment.

**252.**

These economic losses are ongoing and expected to continue unless the Court orders corrective relief.

## II. Compensatory Damages — Professional and Licensing Harm

**253.**

Defendants' actions caused Plaintiff to suffer **regulatory harm**, including:
(a) **enhanced scrutiny by the New York State Department of Financial Services (DFS)**;
(b) **impaired licensing standing** due to the presence of false criminal allegations believed to implicate Plaintiff;
(c) **increased compliance burdens and threats to Plaintiff's business credentials**; and
(d) **interference with Plaintiff's ability to maintain and grow professional relationships in regulated industries**.

**254.**

These harms have materially affected Plaintiff's ability to pursue her chosen occupation and derive income from her licensed business activities.

## III. Compensatory Damages — Reputational, Liberty, and Stigma-Plus Injury

**255.**

Plaintiff suffered profound **Fourteenth Amendment liberty deprivation** because Defendants publicly branded her as connected to "felony deed fraud," "forgery," or a "$10 fraudulent transfer"—allegations entirely fabricated and unsupported by any evidence.

**256.**

This unconstitutional stigma was accompanied by tangible harm ("plus"), including:
(a) loss of business income;
(b) loss of clients and professional relationships;
(c) loss of business goodwill;
(d) damage to Plaintiff's creditworthiness and credibility; and
(e) professional impairment in ongoing DFS-regulated operations.

**257.**

Plaintiff is therefore entitled to damages for the full extent of her **stigma-plus constitutional injury**, which continues to accrue due to ongoing republication of the fabricated narrative by municipal filings and online indexing.

## IV. Compensatory Damages — Emotional Distress, Anxiety, and Psychological Harm

**258.**

As a result of Defendants' actions—including the defamation, fabrication, retaliatory conduct, regulatory exposure, and ongoing public dissemination of false felony allegations—Plaintiff suffered severe emotional and psychological harm, including:

(a) anxiety, humiliation, and distress;
(b) damage to personal relationships;
(c) fear of professional ruin;
(d) ongoing emotional anguish resulting from daily public exposure to false allegations; and
(e) continued distress due to Defendants' refusal to correct their false statements.

**259.**
These harms were foreseeable, directly caused by Defendants' misconduct, and continue unabated.

## V. Special Damages — Costs, Fees, and Business Disruption

**260.**
Plaintiff incurred additional expenses directly attributable to Defendants' misconduct, including:

(a) time and resources spent responding to false allegations;
(b) costs associated with retaining professionals to defend against regulatory inquiries;
(c) loss of productivity and operational disruption;
(d) reputational repair efforts; and
(e) administrative burdens imposed by Defendants' false filings and ongoing defamation.

**261.**
These special damages are recoverable and continue to accrue.

## VI. Punitive Damages (Against Individual Defendants)

**262.**
The conduct of individual Defendants—including NYPD officers, KCDAO personnel, Corporation Counsel attorneys, and the private defendants—was malicious, intentional, reckless, and undertaken with **deliberate disregard** for Plaintiff's constitutional rights.

**263.**
Punitive damages are warranted because:

(a) individual defendants knowingly created, perpetuated, or ratified false criminal allegations;
(b) the misconduct was intentional and retaliatory;
(c) Defendants acted with conscious indifference to Plaintiff's rights and livelihood; and
(d) punitive damages are necessary to deter similar future misconduct.

**264.**
Punitive damages are not sought against the City of New York, as prohibited by law, but are sought against all individual defendants in their personal capacities.

## VII. Injunctive and Declaratory Damages (Prospective Relief)

**265.**
Plaintiff seeks injunctive relief because the harm is **ongoing**.
The City continues to:

(a) publish and maintain false Rule 11–certified filings;

(b) refuse to correct the fabricated narrative;

(c) allow NYPD/KCDAO documents containing false allegations to remain active; and

(d) enable the public dissemination of defamatory statements that harm Plaintiff daily.

**266.**

Prospective relief is necessary to:

(a) compel correction or withdrawal of false municipal filings;

(b) require disclosure that no judicial process ever occurred;

(c) prevent further republication of the fabricated narrative; and

(d) restore Plaintiff's constitutional and business rights.

## VIII. Attorney's Fees

**267.**

Plaintiff is entitled to recover attorney's fees and litigation costs under **42 U.S.C. § 1988**, as this suit seeks enforcement of civil rights under § 1983, § 1985, and § 1986.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Charmine Ellis** respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally where permitted by law, and award the following relief:

### A. Compensatory Damages

1. Award **compensatory damages** in an amount to be determined at trial for:
   (a) loss of business income and profits;
   (b) loss of clients and contractual relationships;
   (c) damage to business goodwill and professional reputation;
   (d) impairment of mortgage licensing and DFS regulatory standing;
   (e) reputational and stigma-plus injuries;
   (f) emotional distress, humiliation, and psychological harm; and
   (g) all other economic and noneconomic losses caused by Defendants.

### B. Special Damages

2. Award **special damages** for costs incurred due to Defendants' misconduct, including professional fees, compliance burdens, reputational repair costs, lost productivity, and administrative disruption.

### C. Punitive Damages (Against Individual Defendants Only)

3. Award **punitive damages** against all individual Defendants (but not the City of New York) for their malicious, deliberate, reckless, and constitutionally offensive conduct.

## D. Declaratory Relief

4. Issue a **declaratory judgment** stating that:
   (a) Defendants' fabrication, publication, and ratification of false felony allegations violated Plaintiff's constitutional rights under the First and Fourteenth Amendments;
   (b) no judicial process, sealing order, or criminal case ever existed involving Plaintiff;
   (c) the City's Rule 11–certified filings contained false statements and violated Plaintiff's rights; and
   (d) Defendants' conduct constituted unlawful conspiracy and failure to intervene.

## E. Injunctive Relief (Prospective and Remedial Orders)

5. Grant **injunctive relief** requiring the City of New York and its agencies to:

(a) **correct, amend, and/or withdraw** all municipal filings, statements, and records falsely referencing a felony arrest, judicial proceeding, sealing order, or Plaintiff's alleged involvement in criminal conduct;

(b) **notify federal and state agencies**, including DFS, that the allegations were fabricated and are not supported by any judicial process or evidence;

(c) **remove or correct all false NYPD, KCDAO, and Corporation Counsel records** relating to the fabricated narrative;

(d) **cease and desist** from further publication or reliance on the false felony narrative; and

(e) implement **appropriate training, supervision, and procedural safeguards** to prevent municipal attorneys from submitting false or unverified factual statements in future litigation.

## F. Equitable and Ancillary Relief

6. Order the creation of a **corrective public statement** by the City clarifying that Plaintiff was never investigated, charged, or implicated in any criminal proceeding and that prior municipal filings were false.

7. Grant such **other and further equitable relief** as the Court deems just and proper to fully remedy the continuing constitutional injuries described herein.

## G. Attorney's Fees and Costs

8. Award **reasonable attorney's fees, costs, and litigation expenses** under **42 U.S.C. § 1988** and all other applicable law.

## H. Pre- and Post-Judgment Interest

9. Award **pre-judgment and post-judgment interest** to fully compensate Plaintiff for all monetary damages awarded.

## I. Any Other Relief

10. Grant **such other and further relief** as this Court deems just, proper, and equitable.

**Charmine Ellis**
Plaintiff, Pro Se
1418 Saint Marks Avenue
Brooklyn, NY 11233

Email: charmine@gctmortgage.com